# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIE, KENNY, AND KATIE BARTON, AND H.B., A MINOR BY AND THROUGH HER MOTHER AND NEXT FRIEND, JULIE BARTON,<br><br>   Plaintiffs,<br><br>-vs-<br><br>OVINTIV MID-CONTINENT, INC.,<br><br>   Defendant. | Case No. CIV-20-1098-F |

## ORDER

  Before the court is Defendant Ovintiv Mid-Continent Inc.'s Partial Motion to Dismiss, filed March 12, 2021. Doc. no. 16. The motion is filed pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiffs have responded, opposing dismissal, and defendant has replied. Doc. nos. 17 and 18. Upon due consideration, the court makes its determination.

## I.

  Plaintiffs Julie Barton, Kenny Barton, and Katie Barton commenced this action against defendant Ovintiv Mid-Continent Inc. in the District Court of Kingfisher County, State of Oklahoma. Plaintiffs' petition alleged a claim of private nuisance. Subsequently, plaintiffs filed a first amended petition requesting damages in excess of $75,000. Defendant then removed the action to this court on the basis of the existence of diversity jurisdiction. Plaintiffs, with leave of this court, filed a second amended complaint, adding H.B., by and through her mother and next friend,

Julie Barton, as a party plaintiff. They also added claims of trespass, intentional interference with prospective economic advantage, strict liability, and negligence. Defendant's motion challenges the newly added claims.

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). To survive a motion to dismiss, plaintiffs must nudge their claims across the line from conceivable to plausible. Id. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that these plaintiffs have a reasonable likelihood of mustering factual support for their claims. Ridge at Red Hawk, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of the plaintiffs' well-pleaded factual allegations and views them in the light most favorable to the plaintiffs. Id. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

II.

The pertinent allegations of the second amended complaint are as follows.

In May of 2004, Kenny Barton and Julie Barton purchased a home and seven acres of land located at 5718 E. 840 Rd., Kingfisher, Oklahoma. Kenny and Julie divorced in May of 2019. As a result of the divorce, Kenny owns the property and pays the mortgage. Julie Barton, Katie Barton and H.B. reside or have resided on the property. There were no plans to sell the property at least until H.B. graduated from high school.

Upon application of Ovintiv Mid-Continent Inc., the Oklahoma Corporation Commission created a 640-acre horizontal spacing unit for Section 12-15N-9W, the section which encompasses plaintiffs' property, to drill for and produce hydrocarbons. Ovintiv could drill a horizontal well anywhere in that 640-acre unit.

In June of 2020, Ovintiv began drilling a horizontal well within several hundred feet of plaintiffs' property. Prior to drilling, the company was aware it would need additional casing for the well due to the "known potential risk of encountering an over-pressurized zone in the morrow series in the area." Doc. no. 15, ¶ 26.

Ovintiv's operations generated nonstop and continuous noise throughout the day and lights throughout the night. Emissions from the drilling rig began to permeate plaintiffs' property. Julie, Katie and H.B. suffered lightheadedness, nausea, and shortness of breath.

On July 9, 2020, Julie, Katie and H.B. were evacuated to a Holiday Inn, which was paid for by Ovintiv. Because of Ovintiv's operations and the move, Julie and Katie were not able to babysit children for friends and family. Julie and Katie had used the property to babysit children since October of 2017.

After receiving a complaint from Julie and Katie, the Oklahoma Department of Environmental Quality visited the property on July 16, 2020. The ODEQ smelled "gassy emissions" from Ovintiv's operations. Doc. no. 15, ¶ 38.

The next day, Julie and Katie placed carbon monoxide detectors in the home. On July 19, 2020, the detectors indicated the presence of 400 ppm of carbon monoxide. According to the information provided with the detectors, 400 ppm would result in hallucinations, dementia, and serious headaches within one to two hours and risk of death after three hours.

Julie and her counsel were informed by ODEQ on July 24, 2020 that emissions from Ovintiv's operations would increase during the fracking process, and they would continue past completion of the well.

On or around August 19, 2020, after Ovintiv completed the initial drilling of the well, Julie, Katie, and H.B. moved back into the home. Ovintiv thereafter "fracked" near the home. Doc. no. 15, ¶ 45. Ovintiv's operations have continued to interfere with plaintiffs' quiet enjoyment of the property resulting from fumes and emissions from Ovintiv's flare, lights coming into Julie's bedroom window at night, loud and continuous noises, and droplets of petroleum fluid "spattered" around the property. *Id*. at ¶ 48.

Due to defendants' operations, Katie has moved to California to live with Kenny. According to plaintiffs, they are left with no choice but to sell the property.

III.

*Trespass*

In the second amended complaint, plaintiffs allege defendant trespassed on their property by allowing dangerous levels of emissions to permeate their property. Additionally, they allege the company is continuing to trespass on their property as result of emissions from its flare, which is located near their property.

Ovintiv argues that plaintiffs' trespass claim should be dismissed because they have failed to allege an actual physical invasion of the property.  According to the company, an intangible intrusion, such as smoke, noise, odor, or light, is treated under Oklahoma law as a nuisance, rather than a trespass.

Plaintiffs respond the alleged emissions constitute a tangible trespass.  They posit that the emissions are different from intrusions such as noise, odor or light because they were poisonous fumes and were potentially fatal.  According to plaintiffs, poisonous fumes were more than a mere inconvenience.  In addition, plaintiffs contend that Ovintiv's contamination of the air constitutes a tangible trespass because it was perceptible by human senses.  Further, even if the contamination constitutes an intangible intrusion, plaintiffs argue they still have a trespass claim because the dangerously high levels of carbon monoxide rendered their home uninhabitable.

In reply, defendant argues that a contamination is not a tangible trespass unless it is capable of being felt by touch, or is palpable.  Defendant asserts that the alleged gaseous emissions are "impalpable" and thus an intangible intrusion.  Doc. no. 18, at 6.  It also asserts that plaintiffs have not alleged the intangible emissions caused any physical damage to their property.  Even if the property were uninhabitable, Ovintiv contends it only resulted in an interference with plaintiffs' use of the property.  It did not, the company maintains, result in any physical damage to the property.

The court, upon review, concludes that plaintiffs have not alleged a plausible claim of trespass.  Despite being perceptible through smell, the court concludes that the fumes or emissions at issue are impalpable and constitute an intangible intrusion. *See*, 75 Am. Jur. 2d Trespass § 29 (recognizing smoke, noise, light, and vibration as intangible intrusions); Goldstein v. ExxonMobil Corporation, Case No. CV 17-2477 DSF (SKx), 2019 WL 2603967, at *9 (C.D. Calif. April 1, 2019) (recognizing toxic

or malodorous gas intrusions as intangible intrusions); Ivory v. International Business Machines Corp., 116 A.D.3d 121, 129-130 (3d. Dep't NY 2014) (vapor intrusion and air emissions caused an intangible intrusion); *see also*, Cook v. Rockwell Intern. Corp., 618 F.3d 1127, 1148 (10th Cir. 2010) ("The meaning of the term 'intangible' is something that is impalpable, or incapable of being felt by touch . . . We conclude that noise, despite being perceptible through hearing, is impalpable, and thus, intangible.") (quoting Public Service Co. of Colorado v. Van Wyk, 27 P.3d 377, 387 (Colo. 2001)).  Oklahoma law allows a trespass claim for an intangible intrusion if a plaintiff pleads "substantial damage to the property." Beal v. Western Farmers Elec. Co-op, 228 P.3d 538, 541 (Okla. Civ. App. 2009).  Plaintiffs have not advanced any factual allegations indicating that there was substantial damage to their property.  While plaintiffs assert the subject fumes or emissions rendered their property uninhabitable, the property is uninhabitable because of the personal harm to plaintiffs, not because of any physical damage to the property itself.  Thus, because plaintiffs do not plead that there was substantial damage to the property as a result of the fumes or emissions, the court concludes that dismissal of the trespass claim is appropriate.

*Intentional Interference with Prospective Economic Advantage*

Next, plaintiffs allege that defendant's decision to drill the horizontal well within several hundred feet of their property has interfered with a prospective economic advantage.  According to plaintiffs, Kenny Barton has a business relationship with the mortgagee to which he pays the mortgage for the property. They allege Kenny entered into that relationship with the intent of receiving a benefit of asset appreciation on the property.  They allege that prospective economic advantage has been interfered with by Ovintiv because they are forced to sell the property and cannot fully capitalize on the asset appreciation of the property. Plaintiffs allege that defendant knew or should have known that it would be

6

detrimental to the owner of the property for defendant to drill the horizontal well in such proximity to the property.

Ovintiv asserts that plaintiffs have no claim for intentional interference with prospective economic advantage, because the mortgage is a debt and not a business relationship with an expectation of a profit. Additionally, Ovintiv contends that plaintiffs have failed to allege any facts demonstrating that they acted with malice. Ovintiv further argues that if the mortgage is terminated, it will be due to the actions of Kenny Barton and not the company.

Plaintiffs respond that Kenny Barton incurred debt, via the loan agreement, with the expectation of a future benefit resulting from the appreciation in the value of the property. They contend that it is reasonable for a mortgagor to have an expectation of financial gain resulting from the appreciation and future sale of property. Plaintiffs contend they have sufficiently alleged malice by alleging Ovintiv knew that drilling the well so close to plaintiffs' home would cause its value to decline.

In reply, Ovintiv argues that plaintiffs conflate two issues: Kenny Barton's loan agreement and mortgage with the bank and his ownership of the property. The company maintains that Kenny's relationship with the bank is not one which would give rise to an expectation of profit and Kenny's ownership of the property is not a relationship at all. Further, Ovintiv contends that the factual allegations do not show it acted with the sole intent of interfering with Kenny's expectation of the property's value appreciating.

Upon review, the court concludes that plaintiffs have failed to allege a plausible claim for intentional interference with a prospective economic advantage. The elements of the claim are: "1.) the existence of a valid business relation or expectancy; 2.) knowledge of the relationship or expectance on the part of the interferer; 3.) an intentional interference inducing or causing a breach or termination

of the relationship or expectancy; and 4.) resultant damage to the party whose relationship has been disrupted." Loven v. Church Mutual Insurance Company, 452 P.3d 418, 425 (Okla. 2019).  Initially, with respect to plaintiffs, Julie Barton, Katie Barton and H.B., there are no factual allegations of the existence of a valid business relation or expectancy.  According to their pleading, plaintiff, Kenny Barton, owns the property and pays the mortgage.  There are no factual allegations plausibly stating that they had any expectation of financial gain resulting from the future sale of the property.  As to plaintiff, Kenny Barton, the court assumes without deciding that sufficient factual allegations are set forth to support the existence of a valid business expectancy and knowledge by Ovintiv of that expectancy.  Nonetheless, the court concludes that the factual allegations are insufficient to support the intentional inference element of the claim.  That element "clearly requires a showing of bad faith . . . The interference must be the purpose of the tortfeasor's act, and their motive must include a desire to interfere and disrupt the others' prospective economic business advantage." Loven, 452 P.3d at 426 (footnotes omitted).  The factual allegations, viewed in a light most favorable to plaintiff, Kenny Barton's favor, do not indicate that Ovintiv drilled the horizontal well in close proximity to the property for the intentional purpose of interfering or disrupting Kenny's economic business advantage in the future sale of the property.  Therefore, the court concludes that dismissal of the tort claim is warranted.

*Strict Liability*

Plaintiffs additionally allege Ovintiv is strictly liable to them for its conduct of drilling and fracking in close proximity to their property.  According to plaintiffs, defendant's actions meet the requirements to be considered an ultrahazardous activity under Section 520 of the Restatement (Second) of Torts.

In its motion, Ovintiv contends that plaintiffs' strict liability claim should be dismissed because plaintiffs fail to plausibly allege that the operation of an oil and

gas well constitutes an ultrahazardous activity. Defendant asserts that the operation of an oil and gas well is not an ultrahazardous activity as the possible risks involving its operation can be minimized through reasonable care. Indeed, defendant contends that plaintiffs acknowledge in their amended pleading that the risk of harm to them could have been minimized by setting back the well. Defendant further points out that the Second Restatement of Torts declares rural oil and gas wells to be non-ultrahazardous activities and that its operation of the rural horizontal well does not meet the Restatement's criteria of an ultrahazardous activity.

Plaintiffs, in response, assert the ultrahazardous nature of oil and gas wells is a matter of first impression under Oklahoma law. However, they argue that Oklahoma caselaw on ultrahazardous activities weighs in favor of plaintiffs with respect to defendant's alleged conduct. Plaintiffs further contend that all of the Restatement factors for determining an ultrahazardous activity, save and except one—common usage—weigh in favor of plaintiffs with respect to defendant's alleged conduct.

Defendant replies that that the factual circumstances of the Oklahoma authority cited by plaintiffs are dissimilar, and thus, should not be extended to the circumstances of the case at bar. Further, defendant argues the non-existence of the most important Restatement factor—risk not eliminated by reasonable care—is fatal to plaintiffs' claim.

Whether an activity is an ultrahazardous one so that strict liability will be imposed is to be determined by the court. The court is to consider "all the factors listed in [Section 520], and the weight given to each that it merits upon the facts in evidence." Restatement (Second) of Torts § 520, comment (l). Although the court recognizes that the issue can be determined at the pleadings stage, *see*, Reece v. AES Corp., Case No. CIV-12-0457-JH, 2014 WL 61242, at *6 n. 13 (E.D. Okla. Jan. 8, 2014), the court nonetheless concludes the record in this case is insufficiently

developed for the court to appropriately determine whether the doctrine of strict liability should be applied in this case. On that point, the court reminds the parties that we are still at the pleading stage. The question presented is whether plaintiffs have, with nothing more than black letters on white paper, pled themselves into court on the strict liability claim. Any sort of a *broad* ruling that strict liability might apply in the *general* circumstances of the drilling of a well in the hope of finding and producing hydrocarbons would be truly extraordinary. But plaintiffs have managed to plead some notably unusual circumstances. Consequently, at this juncture, the court is constrained to conclude that the strict liability claim is not subject to dismissal under Rule 12(b)(6). Defendant may challenge the strict liability claim at the summary judgment stage based upon a more fully developed record.

*Negligence*

Lastly, plaintiffs allege a claim of negligence against Ovintiv based upon its decision to locate, drill, and operate the horizontal well in close proximity to their property. Ovintiv posits that the negligence claim should be dismissed because plaintiffs cannot plausibly claim it breached any duty owed to plaintiffs in determining where to locate the well. According to the company, its only duty under Oklahoma law is to conduct itself as an ordinary prudent operator. The company contends that while courts look to state statutes to determine what would be expected of an ordinary prudent operator, "the Oklahoma Legislature has not imposed any statutorily required conduct on operators" with respect to location of wells. Doc. no. 16, at 11. It points out that the legislature has enacted a statute, 52 O.S. § 320.1, addressing the appropriate setback between dwellings and wellbores, but that statute only prevents a homeowner from locating a dwelling within 50 feet of well equipment and 125 feet from an active wellbore. Ovintiv also points out that plaintiffs admit in their pleading the well is located several hundred feet from the property. Further, it asserts that plaintiffs have not alleged that the well is located

10

"in a manner different than hundreds or thousands of wells across Oklahoma." Doc. no. 16, at 12.

In response, plaintiffs assert that the particular circumstances of this case involved the heightened risk of encountering an over-pressured zone, resulting in the release of toxic gases. In light of that risk, plaintiffs contend an ordinary prudent operator would not have drilled the well so close to their property. Plaintiffs assert that § 320.1 does not establish the safety standard for the proximity between dwellings and well sites for operators as the statute places the burden of compliance on homeowners. Plaintiffs contend a much more appropriate safety standard is that found in the Kingfisher City Ordinance, 14-2-1, which prohibits oil and gas companies from drilling, operating, or maintaining a well within 500 feet of an existing dwelling. While plaintiffs recognize their property is not located within the city limits of Kingfisher, they contend that the ordinance establishes a more appropriate safety standard. Further, plaintiffs assert that under Oklahoma law, a heightened duty of care attaches when dealing with dangerous substances, such as natural gas.

Ovintiv, in reply, argues that the Kingfisher City Ordinance is inapplicable as plaintiffs' property is not located within the Kingfisher city limits. In the absence of a local law, Ovintiv contends that § 320.1 controls. As the allegations indicate the well is located farther than 125 feet from plaintiffs' dwelling, the company asserts that plaintiffs cannot show a breach of duty based upon the location of the well. With respect to the conclusory allegation that the well was drilled into an over-pressurized zone, Ovintiv asserts that the documents supporting plaintiffs' pleading show that in response to that risk, it set an intermediate string of casing immediately above the morrow series, which had been approved of by the Oklahoma Corporation Commissions. Thus, the company contends that plaintiffs cannot show it breached any duty with respect to the risk of an over-pressurized zone.

11

Upon review, the court finds that plaintiffs have stated a plausible claim of negligence. "The three necessary elements to a finding of negligence are (1) a duty owed by the defendant to protect plaintiff[s] from injury; (2) failure to fulfill that duty and (3) injuries to plaintiff[s] proximately caused by defendant's failure to meet the duty." Fargo v. Hays-Kuehn, 352 P.3d 1223, 1227 (Okla. 2015). Ovintiv, in its briefing, acknowledges a duty of due care owed to plaintiffs. To fulfill this duty, Ovintiv must do what a prudent operator would do under the particular circumstances of the case. *See*, *id*. at 1227 n. 11 ("Negligence comprehends a failure to exercise due care as required by the circumstances of the case; a failure to do what a person of ordinary prudence would have done under the circumstances or the doing of what such person would not have done under the circumstances.") (quoting Union Transp. Co. v. Lamb, 123 P.2d 660, 663 (Okla. 1942)). A determination of whether a defendant's action meets the standard of due care is generally a question of fact, unless under the facts, reasonable minds could not differ or where the law definitely prescribes the standard of duty. *Id*. at 1227 and n. 11. While Ovintiv contends that § 320.1 provides the standard of care, the statute does not specifically delineate the standard of care for an operator. It makes it unlawful "to locate any habitable structure" within 125 feet from "the wellbore of an active well." 52 O.S. § 320.1. However, it does not make it unlawful for an operator to locate a well within 125 feet of an existing habitable structure. The court therefore cannot conclude that § 320.1 discernibly prescribes an enforceable duty. The court, accordingly, does not "adopt the conduct required by the statut[e] as that which would be expected of a reasonably prudent person." Busby v. Quail Creek Golf and Country Club, 885 P.2d 1326, 1329 (Okla. 1994). Viewing the factual allegations in a light most favorable to plaintiffs, the court concludes that plaintiffs have advanced factual allegations sufficient to support a claim that defendant failed to fulfill its duty of due care to plaintiffs and that plaintiffs' injuries were proximately caused by defendant's failure

to satisfy that duty. The court again reminds the parties that we are at the pleading stage. Whether a negligence claim will get to trial is a matter yet to be determined. That said, the court concludes at this point that plaintiffs' negligence claim is not subject to dismissal under Rule 12(b)(6).

IV.

Plaintiffs have not sought leave to amend their pleading if the court finds any of the challenged claims deficient. However, it is not entirely clear from the parties' briefing that it would be futile to allow plaintiffs an opportunity to again amend their pleading to provide factual allegations sufficient to state plausible claims of trespass and intentional inference with prospective economic advantage. Therefore, the court concludes that the claims should be dismissed without prejudice under Rule 12(b)(6). The court will set a deadline for filing motions to amend at the scheduling conference to be held in this case. If no motion to amend is filed by plaintiffs within the time prescribed by the court or if any filed motion to amend is denied, the claims shall be deemed dismissed with prejudice under Rule 12(b)(6).

V.

Based upon the foregoing, Defendant Ovintiv Mid-Continent Inc.'s Partial Motion to Dismiss (doc. no. 16), filed March 12, 2021, is **GRANTED in part** and **DENIED in part**. The claims of trespass and intentional interference with prospective economic advantage are dismissed without prejudice under Rule 12(b)(6), Fed. R. Civ. P. The claims of strict liability and negligence, along with the claim of private nuisance, remain pending.

IT IS SO ORDERED this 21st day of April, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-1098p004.docx